**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| REFLEX MEDIA, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Case No.: 2:20-cv-00051-GMN-EJY |
| vs. ) | |
| ) | **ORDER** |
| RICHARD EASTON LIMITED, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is the Motion to Dismiss ("MTD"), (ECF No. 34), filed by Defendant Richard Easton ("Defendant"). Plaintiffs Reflex Media, Inc. ("Plaintiff Reflex") and Clover8 Investments PTE. LTD. ("Plaintiff Clover8") (collectively, "Plaintiffs") filed a Response, (ECF No. 37), but Defendant did not file a Reply.

Also pending before the Court is the Motion for Partial Summary Judgment ("MPSJ"), (ECF No. 58), filed by Plaintiffs. Defendant, however, did not file a Response.

For the reasons discussed below, the Court **DENIES** Defendant's Motion to Dismiss and **GRANTS in part and DENIES in part** Plaintiffs' Motion for Partial Summary Judgment.

**I.  BACKGROUND**

This case arises from a trademark infringement dispute. Plaintiff Reflex "operates online social and dating platforms," which Defendant allegedly infiltrated to lure Plaintiffs' clients to use Defendant's own online social and dating platform. (Resp. Mot. Dismiss 1:22–23, ECF No. 37). Plaintiffs provide a detailed review of the facts alleged in the Complaint, and the background and procedural history of the case in their Response to Defendant's MTD and in their own MPSJ. (*See id.* 1:22–5:8); (Mot. Part. Summ. J. ("MPSJ") 1:24–11:25, ECF No. 58). Defendant moved to dismiss the case for failure to be properly served and for failure to state a

claim. (*See generally* Mot. Dismiss ("MTD"), ECF No. 34). Plaintiffs responded, (*see generally* Resp. MTD), and later moved for partial summary judgment, (*see generally* MPSJ).

## II. LEGAL STANDARD

### A. Motion to Dismiss

#### i. Fed. R. Civ. P. 12(b)(5)

FRCP 12(b)(5) authorizes a defendant to move for dismissal due to insufficient service of process. Under FRCP 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "[U]nless the procedural requirements of effective service of process have been satisfied, the court lacks personal jurisdiction to act with respect to that defendant at all." *Cambridge Holdings Group v. Federal Ins. Co.*, 489 F.3d 1356, 1361 (D.C. Cir. 2007). Although Rule 4 is a flexible rule, "without substantial compliance with Rule 4 'neither actual notice or simply naming the defendant in the complaint will provide personal jurisdiction.'" *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986).

When a defendant challenges service, the plaintiff bears the burden of establishing the validity of service under FRCP 4. *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). In granting a Rule 12(b)(5) motion, the court may either dismiss the action without prejudice or retain the action and permit the plaintiff to cure the defects. *See* Fed. R. Civ. P. 4(m); *SHJ v. Issaquah School Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006).

#### ii. Fed R. Civ. P. 12(b)(6)

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions

couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  "However, material which is properly submitted as part of the complaint may be considered." *Id.*  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in

the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B. Motion for Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable factfinder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing

the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, the court must deny summary judgment and it need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th

Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

In his MTD, Defendant seeks dismissal for seemingly two reasons: (1) Plaintiffs failed to properly serve him; and (2) Plaintiffs fail to state a claim for which relief may be granted. (*See* MTD at 2–3). In their MPSJ, Plaintiffs seek partial summary judgment because there is no genuine issue of material fact that Defendant infringed their trademark and is liable for unfair competition and breach of contract. (*See generally* MPSJ). The Court first addresses Defendant's MTD, and then turns to Plaintiffs' MPSJ.

### A. Motion to Dismiss

In his MTD, Defendant argues the Court should dismiss the case because he was not properly served. (*See* MTD at 2). He contends he was never delivered the Complaint via personal or postal service. (*See id.*). In addition, it appears Defendant moves to dismiss for failure to state a claim for which relief may be granted, maintaining he did not infringe any trademark. (*See id.* at 3). Plaintiffs respond that Defendant's MTD is untimely, and his substantive arguments fail. (*See generally* Resp. MTD).

Pursuant to Fed. R. Civ. P. 12, "a defendant has twenty-one days after being served with the summons and complaint to file a responsive pleading. . . . One way in which a defendant

may respond to a complaint is by filing a motion to dismiss." *Rojas v. Lewis Brisbois Bisgaard & Smith LLP*, No. 2:13-cv-01256-GMN, 2014 WL 3612568, at *3 (D. Nev. July 18, 2014).

Here, Plaintiffs were originally unable to serve Defendant, so they filed the Motion to Permit Alternative Method of Service on Defendant to serve him with alternative means. (Resp. MTD 1:28–2:4); (Mot. Permit Alt. Method Service ¶ 1–22, ECF No. 29). After the Court granted this motion, Plaintiffs completed service on Defendant on February 3, 2021. (Resp. MTD 2:7–4:6); (Joseph Schaeffer Decl. ¶ 3, Ex. B to Notice, ECF No. 32-2); (*see generally* Notice, ECF No. 32). Thus, Defendant's contention that he was not properly served is incorrect. Moreover, Defendant had until February 24, 2021, to answer Plaintiffs' Complaint. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Defendant filed the instant MTD on April 22, 2021, well outside the twenty-one-day deadline under Rule 12.[1] Thus, the Court finds Defendant untimely filed the MTD.

Even if Defendant had timely filed his MTD, he fails to provide any legal authority to support his bare contentions. For example, regarding Plaintiffs' trademark infringement claims, Defendant maintains that other than sharing the same colors, the logos in dispute between the parties do not resemble each other. Defendant provides what seem to be screenshots of the allegedly infringing website, "First Date Club," but they do little to support the notion that Plaintiffs fail to state a claim. (*See* Screenshots at 5–6, Ex. 1 to MTD, ECF No. 34). Defendant does less to show that the Court should dismiss Plaintiffs' unfair competition, breach of contract, intentional interference with contractual relations, and Computer Fraud and Abuse Act claims. To support dismissing these claims, Defendant contends "Plaintiffs are manufacturing baseless claims to which [they have] no actual proof." (MTD at 3). This is

---

[1] It appears Defendant requested an extension of March 15, 2021, to answer Plaintiffs' Complaint. (*See* Correspondence Re Easton's Extension and Call Request at 6, Ex. 6 to Resp. MTD, ECF No. 37-8). However, the parties did not file a request or stipulation requesting said relief. Even if they had, Defendant filed his MTD more than one month after the requested deadline.

wholly insufficient to dismiss Plaintiffs' claims. Accordingly, the Court denies Defendant's MTD.

### B. Motion for Partial Summary Judgment

Plaintiffs seek summary judgment on Claims I through VII of their Complaint. (*See generally* MPSJ). Defendant, however, failed to respond. Plaintiffs contend the Court should grant their MPSJ as unopposed, but the Court must address the merits of a motion for summary judgment, even if it is unopposed. *See Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003). Thus, the Court addresses each claim Plaintiffs seek summary judgment on.

#### i. *Trademark Infringement Claims*

To prevail on a trademark infringement claim, a plaintiff must show: "(1) it has a valid, protectable mark, and (2) the defendant's use of the mark is likely to cause consumer confusion." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018). "Federal registration provides 'prima facie evidence' of a trademark's validity and entitles the plaintiff to a 'strong presumption' that the mark is protectable." *Waters v. Notorious Media, LLC*, No. 2:21-cv-08623-MEMF(ASx), 2022 WL 3446110, at *6 (C.D. Cal. Aug. 17, 2022) (citing *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005)). The party claiming ownership satisfies the validity prong if proof of registration goes uncontested. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014).

To determine whether there will be a likelihood of confusion, the Court considers several factors, the so-called *Sleekcraft* factors, including: the strength of the mark, the proximity of the goods, the similarity of the marks, the evidence of actual confusion, the marketing channels used, the type of goods and degree of care likely to be exercised by the purchaser, the defendant's intent in selecting the mark, and the likelihood of expansion of product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in*

*part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003). The Court notes that the *Sleekcraft* test is flexible in that some factors weigh heavier than others. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (citing *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999)). So, the Court need not address each factor to reach its conclusion. *Brookfield Commc'ns, Inc.*, 174 F.3d at 1054.

Here, Plaintiffs contend Plaintiff Clover8 is the owner of the federally registered trademarks "SEEKING," "SEEKING ARRANGEMENT," "SEEKINGARRANGEMENT," "SEEKING MILLIONAIRE," and "SA." (Compl. ¶¶ 1, 4, 21–31). Defendant does not contest Plaintiff Clover8's ownership and Plaintiffs provide the U.S. Trademark Registration Certificates for each trademark of which it claims ownership. (*See* Trademarks at 2–83, Ex. 3 to MPSJ, ECF No. 58-3). Therefore, Plaintiff Clover8 is the presumed owner of the "SEEKING," "SEEKING ARRANGEMENT," "SEEKINGARRANGEMENT," "SEEKING MILLIONAIRE," and "SA" trademarks.

Next, Plaintiffs contend Defendant's use of their marks caused market confusion. Keeping in mind that the Court need not address each *Sleekcraft* factor, within the context of the internet, "the three most important *Sleekcraft* factors are (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the 'simultaneous use of the Web as a marketing channel.'" *GoTo.com, Inc.*, 202 F.3d at 1205. Regarding the similarity of the marks, Defendant's use of Plaintiffs' trademarks as hashtags to promote his competing business, First Date Club ("FDC") infringes Plaintiffs' marks. *See Pub. Impact, LLC v. Boston Consulting Grp., Inc.*, 169 F. Supp. 3d 278, 295 (D. Mass. 2016) (finding that a defendant that used a plaintiff's mark in a hashtag, "#publicimpact," was likely to cause confusion regarding the plaintiff's "Public Impact" trademark); *Chanel, Inc. v. WGACA, LLC*, No. 18 Civ. 2253 (LLS), 2018 WL 4440507, at *2 (S.D.N.Y. Sept. 14, 2018) (finding that a defendant that conjoined

their business acronym with a plaintiff's registered trademark in a hashtag, "#WGACACHANEL," infringed the plaintiff's "Chanel" mark); (FDC Social Media at 2–54, Ex. 19 to MPSJ, ECF No. 58-19). Thus, this factor weighs in favor of Plaintiffs.

Next, the parties offer essentially identical services: online dating services. Plaintiff Reflex and Defendant run dating websites that target wealthy, attractive people. (MPSJ 17:9–10); (Pelayo Decl. ¶ 18, Ex. 25 to MPSJ); (MTD at 2) ("Plaintiffs have filed a Frivolous Lawsuit in attempt to dominate any and every aspect of the Dating Industry"); (FDC Social Media, Ex. 19 to MPSJ); (Easton FDC Article, Ex. 9 to MPSJ, ECF No. 58-9). Thus, this factor also weighs in favor of Plaintiffs.

Finally, the parties share the same marketing channels. Both parties use social media platforms, and the internet more broadly, to market their services. Specifically, the parties use Twitter, Instagram, and Facebook to promote their websites and dating services. (Example of Seeking Instagram Post, Ex. 4 to MPSJ, ECF No. 58-4); (SA Twitter, Ex. 5 to MPSJ, ECF No. 58-5); (Pelayo Decl. ¶ 20, Ex. 25 to MPSJ); (FDC Social Media, Ex. 19 to MPSJ). Thus, this factor weighs in favor of Plaintiffs. Taken together, Plaintiffs have met their burden of establishing that Defendant has infringed their trademarks. Accordingly, the Court grants summary judgment as to Plaintiffs' trademark infringement claims.

### 1. Damages

Plaintiffs' requested relief include damages against Defendant from infringing on Plaintiffs' trademarks. Plaintiffs cite to 15 U.S.C. § 1117(a) in assessing their request of $756,799.43 in damages, representing Defendant's profits and Plaintiffs' costs of the action. (MPSJ 21:21–24). Under the Lanham Act,

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles

of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

15 U.S.C. § 1117(a).

Here, Plaintiffs prove the profits from Defendant's sales. In conjunction to their MPSJ, Plaintiffs provide Defendant's bank records between 2017 and 2022, showing deposits made into Defendant's bank account. (*See generally* Easton's Produced Bank Records, Ex. 23 to MPSJ, ECF No. 58-23). Plaintiffs contend these deposits represent Defendant's sales or revenue during the time Defendant infringed Plaintiffs' trademarks. (MPSJ 21:25–22:5). Indeed, during discovery, Plaintiffs requested Defendant to produce documents "sufficient to show the annual revenue, costs, and profits—and sources of each—for . . . FIRSTDATECLUB, on an annual basis, for each year from 2016 to the present." (Easton's Produced Bank Records 3:25–27, Ex. 23 to MPSJ). Defendant answered he would supply this evidence "[b]y separate email," that is, the bank records encompassed in Exhibit 23 to Plaintiffs' MPSJ. (*Id.*). Thus, Plaintiffs haven proven sales in the amount of $756,799.43.

Next, Plaintiffs are not entitled to treble damages. Plaintiffs seek these damages because they argue Defendant intentionally counterfeited their trademarks. However, "FirstDatingClub" is neither "identical with" Plaintiff Clover8's registered marks "SEEKING," "SEEKING ARRANGEMENT," "SEEKINGARRANGEMENT," "SEEKING MILLIONAIRE," or "SA," nor "substantially indistinguishable from" those marks. *See* 15 U.S.C. § 1127 (defining "counterfeit" as "spurious mark which is identical with, or substantially indistinguishable from, a registered mark"). After comparing the parties' marks, Defendant's FDC logo differs from Plaintiffs' logo by using different letters, style of font, shape, and background. (*Compare* SA Logo, Ex. 7 to MPSJ, ECF No. 58-7), (*with* FDC Social Media, Ex. 19 to MPSJ, ECF No. 58-19). That their logos share a similar color scheme is

insufficient to demonstrate intentional counterfeiting. The same is true for using Plaintiffs' marks as hashtags or a representative of Defendant's stating they work for the "VIP version of SA." Stating FDC is a "VIP version of SA" implies differentiation between the two services, and instead highlights a supposed superiority of FDC over "SA." Moreover, the evidence Plaintiffs provide showcasing Defendant's representative attempting to recruit one of Plaintiffs' members states they work for FDC, establishing that FDC is a separate entity from SA. (*See* FDC Text SA Member at 2, Ex. 18 to MPSJ, ECF No. 58-18). Thus, the Court finds Plaintiffs have not shown that Defendant intentionally counterfeited their marks. *See Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1079 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2800 (2021) ("a counterfeit claim is merely 'the "hard core" or "first degree" of trademark infringement. . . .'").

Finally, Plaintiffs are entitled to attorney's fees. Under 15 U.S.C. § 1117(a), a court may award reasonable attorneys' fees to the prevailing party in "exceptional cases." *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) (quoting 15 U.S.C. § 1117(a)). While the statute does not define the term "exceptional," generally a trademark case is exceptional when the court finds that a party acted maliciously, fraudulently, deliberately, or willfully. *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir. 2003); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002) (upholding an award of attorneys' fees under § 1117(a) based on finding that a defendant acted "knowingly, maliciously, and oppressively, and with intent to . . . injure"). Exceptional circumstances further include when a party litigates the case in an unreasonable manner, such as refusing to participate in discovery until compelled, avoiding testifying, and delaying proceedings. *Hansen Cold Storage Constr. v. Cold Sys., Inc.*, No. 2:19-cv-07617-SB-MAA, 2022 WL 1199271, at *3 (C.D. Cal. Feb. 11,

2022). Moreover, under the Lanham Act, an award of attorneys' fees is within the district court's discretion. 15 U.S.C. § 1117(a) (stating that the court "may" award fees).

In this case, Plaintiffs have shown that Defendant acted deliberately by creating false accounts, soliciting Plaintiffs' members to become members of FDC, and using Plaintiffs' trademarks as hashtags to promote Defendant's competing business. In addition, Defendant has litigated in an unreasonable manner by refusing to respond to discovery requests, thereby delaying discovery, until the Court compelled him to do so. (*See generally* Order, ECF No. 61). Thus, Plaintiffs are entitled to attorney's fees under 15 U.S.C. § 1117(a). Plaintiffs, however, do not specify the amount in attorney's fees they seek. Accordingly, the Court orders Plaintiffs to submit a memorandum of attorney's fees supporting their attorney's fee request that details the activities, hours spent (in tenths of hours), and the rate charged by each attorney who worked on the MPSJ and/or Reply. Appropriate redactions from billing records for attorney-client privilege or work product may be made for the public filing with non-redacted copies of such records filed under seal. Plaintiffs shall submit their memorandum within fourteen (14) days of entry of this Order. Defendant shall have seven (7) days to file a response, if any is desired. No reply shall be permitted.

### 2. Injunctive Relief

Plaintiffs also seek to permanently enjoin Defendant, his agents, and employees (*e.g.*, contractors, assigns, etc.) from the following:

(a) selling, offering for sale, distributing, advertising, or promoting any goods or services that display any words or symbols that so resemble or are confusingly similar to Reflex's Trademarks as to be likely to cause confusion, mistake or deception, on or in connection with any goods or services that are not authorized by or for Reflex;

(b) using Reflex's Trademarks, or any other marks or domain names confusingly similar to those marks alone or in combination with any other letters, words, letter strings, phases or designs, or the look and feel of any of Reflex's websites in commerce or in connection with any goods or services;

  (c) using Reflex's Trademarks, or any words or phrases confusingly similar to those marks, for the purpose of drawing or diverting traffic to any websites owned or operated by Easton or by any related companies;
  (d) using any word, term, name, symbol, or device or combination thereof that causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of Easton or his goods with Reflex or as to the origin of Reflex's goods or services, or any false designation of origin, false or misleading description or representation of fact; or
  (e) further infringing on the rights of Reflex in and to any of its trademarks, products and services or otherwise damaging Reflex's goodwill or business reputations.

(MPSJ 23:21–24:10). Under the Lanham Act, courts have the "power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark . . . ." 15 U.S.C. § 1116(a). In fact, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). To attain a permanent injunction, Plaintiffs must demonstrate: (1) actual success on the merits; (2) a likelihood of irreparable injury if injunctive relief is not granted; (3) a balance of hardships favoring Plaintiff; and (4) that an injunction will advance the public interest. *Winter v. Natural Res. Def. Counsel*, 555 U.S. 7, 20 (2008).

  Here, Plaintiffs have shown actual success on the merits of its trademark infringement claim. If an injunction were not granted, Plaintiffs would suffer irreparable injury from the ongoing damages to their goodwill and diversion of clients to infringing services. Moreover, the balance of hardships favors Plaintiffs because without an injunction, Plaintiffs will lose goodwill, while an injunction will only prohibit Defendant's infringing activities. Finally, an injunction is in the public interest because "[t]he public has an interest in avoiding confusion between two companies' products." *Internet Specialties West, Inc. v. Milon–DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n. 5 (9th Cir.2009). Accordingly, the Court grants Plaintiffs' request for a permanent injunction as requested.

### ii. *Federal Unfair Competition Claim*

Next, Plaintiffs contend Defendant is liable for unfair competition, specifically, false designation of origin under the Lanham Act. "[T]he courts have uniformly held that common law and statutory trademark infringement are merely specific aspects of unfair competition." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013, 1031 (C.D. Cal. 2011) (citing *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979)). To that end, "[t]he tests for infringement of a federally registered mark under § 32(1), 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same." *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 897 (C.D. Cal. 2014) (citing *Grey v. Campbell Soup Co.*, 650 F.Supp. 1166, 1173 (C.D. Cal. 1986)). Similarly, "[a] claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114." *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 n. 6 (9th Cir. 1999). Here, the Court's previous analysis of trademark infringement applies to Plaintiffs' unfair competition and false designation of origin claim. *See, e.g.*, *Kythera Biopharmaceuticals, Inc.*, 998 F.Supp.2d at 897–98 (analyzing a plaintiff's causes of action for trademark infringement, unfair competition, and false designation of origin together to determine whether the plaintiff sufficiently stated a claim pursuant to Fed. R. Civ. P. 12(b)(6)). Thus, because they satisfied their burden regarding their trademark infringement claim, Plaintiffs also satisfy their burden on their unfair competition claim. Accordingly, the Court grants summary judgment as to the unfair competition claim.

### iii. *Breach of Contract Claim*

Finally, the Court turns to Plaintiffs' contention that Defendant breached the terms of use of Plaintiffs' website. In pertinent part, Plaintiffs' website's terms of use states that the website and the service are for personal use only and prohibits users from "[s]eeking leads or

customer information, even if ultimately requested or received off the site" and "scraping or otherwise collecting data or information of any kind." (May 2018 TOU at 4, Ex. 1 to MPSJ, ECF No. 58-1); (October 2018 TOU at 4, Ex. 1 to MPSJ, ECF No. 58-2). The terms of use also specifically proscribe using the service for "[a]ny competitive purpose, including copying, soliciting, competitive or market analysis, or any other use by a competitor." (May 2018 TOU at 5–6, Ex. 1 to MPSJ); (October 2018 TOU at 5–6, Ex. 1 to MPSJ).

"To prove a breach of contract, the plaintiff must show an existing valid agreement with the defendant, the defendant's material breach, and damages." *Brochu v. Foote Enterprises, Inc.*, 381 P.3d 596 (Nev. 2012). Here, a valid agreement existed in the form of the terms of use Defendant agreed to when he used and registered to use Plaintiffs' website. (*See* May 2018 TOU at 3, Ex. 1 to MPSJ) ("By accessing the website (the 'Website'), including through a mobile application, you ('User', 'Member', or 'You') agree to be bound by these Terms of Use (this 'Agreement') and the Company's Privacy Policy . . . whether or not You register as a Member of SeekingArrangement. . . . You are required to accept these Terms of Use to use the site."); (October 2018 TOU at 3, Ex. 1 to MPSJ, ECF No. 58-2) (same); (Billing and Messages at 8–11, Ex. 11 to MPSJ, Ex. 58-11).

Next, Defendant breached the terms of use by creating false accounts to recruit Plaintiffs' clients to FDC. (MPSJ 25:5–27:1). To show this, Defendant provides evidence demonstrating that an account named "V-Thor" was created on Plaintiffs' website, which was paid for by Defendant.[2] (Billing and Messages at 20–21, Ex. 11 to MPSJ). Plaintiffs provide logs of messages the "V-Thor" account sent to various users to demonstrate Defendant breached the terms of use on hundreds of occasions. (V-Thor Reports at 2–3, Ex. 16 to MPSJ,

---

[2] Further supporting this idea is that the "V-Thor" account used the "+1 (917) 890-1022" and "+1 (917) 748-9892" phone numbers, which were listed on FDC's contact information page under "New Membership" and "Member Services," respectively. (*Compare* Billing and Messages at 20–21, Ex. 11 to MPSJ) (*and id.* at 6, Ex. 11 to MPSJ), (*with* FDC Contact Webpage at 3, Ex. 12 to MPSJ, ECF No. 58-12).

ECF No. 58-16). However, these messages primarily demonstrate "V-Thor" introducing him or herself to the other member. (*See* Billing and Messages at 17–42, Ex. 11 to MPSJ). Plaintiffs point to evidence of ten members complaining that accounts used by Defendant, or his associates, spammed them with text messages to promote or join FDC. (*See* V-Thor Reports at 2–3, Ex. 16 to MPSJ); (PaulC 1972 Reports at 2–3, Ex. 15 to MPSJ, ECF No. 58-15); (Customer Reports at 2, Ex. 17 to MPSJ, ECF No. 58-17); (FDC Text to SA Member at 2, Ex. 18 to MPSJ, ECF No. 18). As such, Plaintiffs have only demonstrated that Defendant breached the terms of use on ten occasions.

Lastly, Plaintiffs have shown the damages element is met by pointing to the liquidated damages provision in their terms of use. (May 2018 TOU at 6, Ex. 1 to MPSJ) ("Each and every Commercial Use or competitive use of the Website is in violation of this Agreement and is subject to a $100,000 award for damages as liquidated damages for such breach."); (October 2018 TOU at 6, Ex. 1 to MPSJ) (same). "'[L]iquidated damage provisions are prima facie valid,' and serve as a good-faith effort to fix the amount of damages when contractual damages are uncertain or immeasurable." *Khan v. Bakhsh*, 306 P.3d 411, 414 (Nev. 2013) (internal citations omitted). Thus, Plaintiffs satisfy their burden of showing Defendant breached the terms of use on ten occasions. As such, Plaintiffs are entitled to $1,000,000.00 in liquidated damages.

In sum, the Court grants summary judgment as to Plaintiffs' trademark infringement, unfair competition, and breach of contract claims. Plaintiffs are entitled to damages of $756,799.43 under 15 U.S.C. § 1117(a) for trademark infringement and $1,000,000.00 for breach of contract. Plaintiffs are also entitled to attorney's fees but are required to submit a memorandum of attorney's fees supporting their attorney's fee request that details the activities, hours spent (in tenths of hours), and the rate charged by each attorney who worked on the Motion for Partial Summary Judgment and/or Reply. Plaintiffs are not entitled to treble

damages.  Finally, Defendant is permanently enjoined from infringing on Plaintiffs' trademarks, consistent with the language stated above.

## V. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 34), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment, (ECF No. 58), is **GRANTED in part and DENIED in part**, consistent with this Order.

**IT IS FURTHER ORDERED** that within thirty (30) days of the entry of this Order, the parties shall file a Proposed Joint Pretrial Order consistent with LR 16-3 and 16-4.

**DATED** this   21   day of November, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court