# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| REFLEX MEDIA, INC. *et al.*,<br><br>          Plaintiffs,<br>    vs.<br><br>RICHARD EASTON LIMITED, *et al.*,<br><br>          Defendants. | Case No.: 2:20-cv-00051-GMN-EJY<br><br>**ORDER** |

Pending before the Court is the Motion for Default Judgment, (ECF No. 77), filed by Plaintiffs Reflex Media, Inc. ("RMI") and Clover8 Investments (collectively, "Plaintiffs"). Defendants Richard Easton Limited, Maria Jose Diaz, Nelida Tejeda Alvarez, and Jorge Osbaldo Rodriguez (collectively, "Defendants" or "Defaulting Defendants") did not file a Response.

For the reasons discussed below, the Court **DENIES** Plaintiffs' Motion for Default Judgment.

## I.    BACKGROUND

This case demonstrates what can happen when business competitors take things too far. Plaintiffs allege that the Defendants, in an attempt to grow their own online dating service, unlawfully used Plaintiffs' trademarks, brand reputation, and membership lists. (*See generally* Compl., ECF No. 1).  RMI operates several dating websites that use federally registered trademarks owned by Clover8. (*Id.* ¶¶ 3–4).  Plaintiffs allege that the Defendant Corporation Richard Easton Limited ("REL"), owner Richard Easton ("Easton"), and employees or agents Maria Jose Diaz, Nelida Tejada Alvarez, and Jorge Osbaldo Rodriguez infringed on Plaintiffs' trademarks and joined RMI's dating platform to recruit RMI's customers to their own dating platform, First Date Club. (*Id.* ¶¶ 5–10).

1    Plaintiffs allege that the Defendants "systematically and willfully" infringed on their

2    registered trademarks by adopting identical counterfeit marks for use on their dating site and

3    social media accounts. (*Id.* ¶¶ 18, 42–49). Plaintiffs' additional causes of action derive from

4    the Defendants' scheme to sign up for RMI's dating service and message their members with

5    the purpose of luring them to First Date Club. (*Id.* ¶¶ 41–87). These messages violated RMI's

6    Terms of Use because Defendants used RMI's site for commercial purposes, created a

7    confusingly similar logo, provided inaccurate registration information, and copied trademarks

8    and member information. (*Id.* ¶ 89). Plaintiffs filed a Complaint asserting nine causes of

9    action: five federal trademark infringement claims, one federal unfair competition claim, one

10   breach of contract claim, one intentional interference with contractual relations claim, and one

11   Computer Fraud and Abuse Act claim under 18 U.S.C. § 1030. (*Id.* ¶¶ 90–150).

12   REL, a Delaware Company, was validly served with a copy of the Summons and

13   Complaint via the Delaware Secretary of State. (Aff. Serv., ECF No. 20). After the time to

14   respond expired, Plaintiffs filed a Request for Entry of Default, (ECF. No 27), and the Clerk of

15   Court entered default, (Entry Default, ECF No. 30).

16   The individuals in this case proved more difficult to serve. On April 8, 2020, Plaintiffs

17   filed a Notice Regarding Service to Individual Defendants, stating that while Richard Easton

18   and wife Maria Jose Diaz lived in the United States when the case was filed, they appeared to

19   have since moved to Mexico. (Not. Regarding Serv., 1:19–25, ECF No. 21). Plaintiffs attached

20   exhibits demonstrating proof of non-service to Easton's last known address in New York. (Ex.

21   1–3 to Not. Regarding Serv.,). Due to this difficulty, Plaintiffs filed a motion requesting to

22   serve all individual Defendants via email, with additional service to Easton and Diaz by mail

23   and social media. (Mot. Permit Alt. Method Serv., ECF No. 29). The Court granted Plaintiffs'

24   request. (Order, ECF No. 31). On February 5, 2021, Plaintiffs filed a Notice of Compliance

25

with the Court's Order Granting Alternative Methods of Service to which they attached proof of alternate service to the four individual Defendants. (ECF No. 32).

On March 31, 2021, Plaintiffs filed a Motion for Default Judgment against the four individuals. (First Mot. Default J., ECF No. 33).  The Court denied this motion because Easton, in his individual capacity, appeared in the case for the first time. (Denial First Mot. Default Judgment, ECF No. 53).  Easton filed a Motion to Dismiss, (Mot. Dismiss, ECF No. 34 at 2), which the Court denied as untimely. (Order, ECF No. 68).

On January 11, 2022, Plaintiffs filed their second Motion for Default Judgment against the three individuals who had not yet appeared in the case: Nelida Tejeda Alvarez, Jorge Osbaldo Rodriguez, and Maria Jose Diaz. (Second Mot. Default J., ECF No. 54).  The Clerk entered default. (Entry Default, ECF No. 59).

Meanwhile, on April 6, 2022, Plaintiffs filed a Motion for Partial Summary Judgment on Claims I-VII against Easton. (Mot. Partial Summ. J., ECF No. 58).  The Court granted summary judgment as to Plaintiffs' claims and awarded Plaintiffs $1,756,799.43 plus attorneys' fees. (Order Granting Partial Mot. Summ. J., ECF No. 68).[1]  The Court also permanently enjoined the Defendants from infringing on Plaintiffs' trademarks. (*Id.*).  Plaintiffs now move for Default Judgment against the remaining Defaulting Defendants.  They seek to recover monetary damages and ask the Court to permanently enjoin the Defaulting Defendants from using RMI's website. (*Id.* 2:17–19).

## II.   **LEGAL STANDARD**

Obtaining default judgment is a two-step process governed by Rule 55 of the Federal Rules of Civil Procedure ("FRCP"). *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, the moving party must seek an entry of default from the clerk of court. FRCP 55(a).

---

[1] The parties then stipulated to dismiss Plaintiffs' eighth and ninth causes of action, which the Court granted. (Stip. Dismiss, ECF No. 73; Order, ECF No. 84).

1    Entry of default is only appropriate when a party "has failed to plead or otherwise defend." *Id.*

2    Additionally, the FRCP 55(a) advisory note indicates that it is inappropriate to enter a default

3    against a party who has indicated their intent to defend. *Id.*  After the clerk enters the default, a

4    party must then separately seek entry of default judgment from the court in accordance with

5    Rule 55(b).  Upon entry of a clerk's default, the court takes the factual allegations in the

6    complaint as true, except those relating to the amount of damages. *See TeleVideo Sys., Inc. v.*

7    *Heidenthal,* 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam).

8        In determining whether to grant default judgment, courts are guided by the following

9    seven *Eitel* factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the

10   plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at

11   stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the

12   default was due to excusable neglect; and (7) the strong public policy favoring decisions on the

13   merits. *Eitel*, 782 F.2d at 1471–72.

14   **III.**    **DISCUSSION**

15       **A. Default Judgment**

16       As an initial matter, the Plaintiffs have met the first step of the two-step process for

17   obtaining default judgment.  Pursuant to FRCP 55(a), the Clerk of the Court correctly entered

18   default against the Defendants because they have not appeared in the case. (*See* Entry Default,

19   ECF Nos. 30, 59).  Thus, the Court, in its discretion, may order a default judgment after a

20   balance of the *Eitel* factors.

21       **1.  Possibility of Prejudice to the Plaintiff**

22       The first *Eitel* factor the Court considers is the possibility of prejudice to the plaintiff.  A

23   defendant's failure to respond or otherwise appear in a case "prejudices a plaintiff's ability to

24   pursue its claims on the merits." *See, e.g.*, *Nationstar Mortg. LLC v. Operture, Inc.*, No: 2:17-

25   cv-03056-GMN-PAL, 2019 WL 1027990, at *2 (D. Nev. Mar. 4, 2019); *see also PepsiCo, Inc.*

1    *v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for

2    default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

3              In this case, Plaintiffs are likely to suffer prejudice without a default judgment allowing

4    them to recover, jointly and severally, from the Defaulting Defendants.[2]  Plaintiffs have already

5    obtained a judgment of $1,756,799.43, plus attorneys' fees, against Easton. (Order Granting

6    Partial Summ. J., ECF No. 68).  But given the allegations that Easton is the owner and CEO of

7    REL, Diaz is Easton's wife, and all Defendants are acting as the "agent, employee, partner, co-

8    venturer, joint venture, successor-in-interest, alter ago, and/or co-conspirator" of all other

9    Defendants, the Defaulting Defendants may have access to additional First Date Club assets.

10   (*See* Compl. ¶¶ 5–10).  So, while Plaintiffs are not without other recourse for recovery entirely,

11   a denial of default judgment would prejudice their ability to actually receive the recovery they

12   are entitled to.  This factor weighs in favor of default judgment.

13            **2.  Plaintiffs' Substantive Claims and the Sufficiency of the Complaint**

14            The second and third factors focus on the merits of Plaintiffs' substantive claims and the

15   sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471.  These factors, often analyzed

16   together, require courts to determine whether a plaintiff has "state[d] a claim on which [it] may

17   recover." *PepsiCo*, 238 F. Supp. 2d at 1175.  Courts often consider these factors "the most

18   important." *Vietnam Reform Party v. Viet Tan – Vietnam Reform Party*, 416 F. Supp. 3d 948,

19

20   _____

21   [2] Plaintiffs appear to request a finding of joint and several liability. Plaintiffs assert, because "the defaulting
     Defendants participated in the alleged torts, the defaulting Defendants may be held personally liable, jointly and
     severally, with the non-defaulting Defendants." (*Id.* 10:25–27) (citing *AECOM Energy & Constr., Inc. v. Ripley*,
22   No. 2:17-cv-05398-RSWL-SSX, 2019 WL 316631, at *10 (C.D. Cal. Jan. 24, 2019).  Following this assertion,
     Plaintiffs request a "judgment against the Defaulting Defendants individually in the same amount of
23   $1,765,799.43 plus costs of $10,825.17 for a total of $1,776,624.60 each." (Mot. Default J. 11:1–3).  Plaintiffs'
     Proposed Order appears to request a finding for joint and several liability, although the order does not use that
24   terminology. (Proposed Order, Ex. 10 to Sec. Mot. Default J., ECF No. 77-10).  Plaintiffs' Proposed Order states
     that "Plaintiffs are entitled to damages in the amount of $1,000,000 in liquidated damages for breach of
     contract." (*Id.*, 2:1–2). Addressing the breach of contract claim, Plaintiffs find $756,799.43 to be a reasonable
25   compensation for the "Defaulting Defendants willful infringement of Plaintiffs' registered trademarks." (*Id.*, 2:5–
     9). The Court interprets this language as seeking $756,799.43 total, not per individual Defaulting Defendant.

962 (N.D. Cal. 2019). If a district court has "serious reservations" about the merits of a plaintiff's claims based on the pleadings, these factors weigh in favor of denying default judgment. *See Eitel*, 782 F.2d at 1472.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Where the allegations in a complaint are not 'well-pleaded,' liability is not established by virtue of the defendant's default and default judgment should not be entered." *See Adobe Sys., Inc. v. Tilley*, No. C09-1085 PJH, 2010 WL 309249, at *3 (N.D. Cal. Jan. 19, 2010).

In this case, Plaintiffs' motion focuses on trademark infringement, unfair competition, and breach of contract. (Mot. Default J., 7:20–23).[3] The Court previously granted summary judgment on these claims in favor of Plaintiffs against the non-defaulting Defendant, Easton. These two factors weigh in favor of default judgment against REL for all three claims, but only in favor of default judgment against Diaz, Alvarez, and Rodriguez for the breach of contract claim.

### a. Trademark Infringement and Unfair Competition

To prevail on a trademark infringement claim, a plaintiff must show: "(1) it has a valid, protectable mark, and (2) the defendant's use of the mark is likely to cause consumer confusion." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018). Courts use several factors to determine whether there will be a likelihood of confusion, including: the strength of the mark, the proximity of the goods, the similarity of the marks, the evidence of actual confusion, the marketing channels used, the type of goods and degree of care

---

[3] Plaintiffs allege five general causes of action in their initial complaint. (Compl. ¶¶ 90–150). Their Motion for Default Judgment addresses only the first three. (Sec. Mot. Default J. 7:20–23).

likely to be exercised by the purchaser, the defendant's intent in selecting the mark, and the likelihood of expansion of product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), abrogated in part on other grounds by *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).  Plaintiffs' unfair competition claim uses the same test. *See Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 897 (C.D. Cal. 2014).

Plaintiffs claim that Clover8 is the owner of the federally registered trademarks and attach the U.S. Trademark Registration Certificates to their Complaint. (Ex. 3–8 to Compl.). The Complaint alleges that Defendants' use of these marks is likely to cause confusion. (*Id.* ¶¶ 51–52).  Defendants allegedly used Plaintiffs' marks in their metadata keywords and on their social media pages, owned a dating service substantially similar to Plaintiffs' service, operated as a direct competitor to Plaintiffs, and advertised in the same marketing channels. (*Id.* ¶¶ 43, 46–48).  These allegations sufficiently plead the elements of trademark infringement and unfair competition, but the Complaint does not specify which Defendant is alleged to have infringed on Plaintiffs' trademarks and through which actions.

Courts in the Ninth Circuit have found pleading to be insufficient when a plaintiff sues multiple defendants without specifying which defendant is liable for which cause of action. *See, e.g.*, *Dougherty v. Bank of Am., N.A.*, 177 F. Supp. 3d 1230, 1253 (E.D. Cal. 2016) (stating that when defendants are referenced collectively under "cause of action" in the complaint, pleading must detail adequate facts against each defendant); *Friedman v. Zimmer*, No. CV 15–502 GHK, 2015 WL 6164787, at *2 (C.D. Cal. July 10, 2015) (noting that lumping defendants together may violate Rule 8 when "the pleadings are largely incomprehensible"); *Finn v. City of Boulder City*, No. 2:14-cv-1835-JAD-GWF, 2015 WL 2186497, at *2 (D. Nev. May 6, 2015) (directing plaintiff to file an amended complaint for not specifying which defendant he sought to hold liable under each "count").

Here, though the Complaint does not specify which Defendant engaged in trademark infringement and unfair competition, the Complaint's factual allegations allow the Court to draw a reasonable inference that one of the Defaulting Defendants, REL, is liable for the misconduct alleged.  Plaintiffs allege that REL and Easton had reason to know that they were infringing on Plaintiffs' intellectual property. (Compl. ¶ 14).  They further allege that REL "is the co-owner/co-operator of the domain address and websites found at www.FirstDateClub.com." (*Id.* ¶ 5).  The Court previously found that Easton used Plaintiffs' trademarks to promote First Date Club, and thus the underlying claim against REL, which Easton owns, has demonstrated merit. (*See* Order Granting Partial Summ. J.).

Plaintiffs allege that the Defaulting Defendants, including the three individuals, are liable because they used RMI's trademarks on their website and adopted an identical counterfeit mark. (Compl. ¶¶ 42–43).  Corporate officers and employees are liable for their corporation's trademark infringement "when they are a 'moving, active conscious force' behind the corporation's infringement." *Deckers Outdoor Corp. v. Bright Trading Corp.*, No. LA CV14-00198 JAK (JEMx), 2014 WL 12564124, at *3 (C.D. Cal. Apr. 28, 2014) (quoting *Novell, Inc. v. Unicom Sales, Inc.*, C-03-2785 MMC, 2004 WL 1839117, at *17 (N.D. Cal. Aug. 17, 2004)).  This standard asks whether a defendant "actively participated as a moving force in the *decision* to engage in the infringing acts, or otherwise caused the infringement as a whole to occur." *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1478 n.8 (11th Cir. 1991)) (emphasis in original).

Unlike REL's involvement as the owner and operator of the infringing website, the Complaint does not allege sufficient facts regarding the involvement of the three individual defendants.  Subheadings (b) and (e) of Plaintiff's Complaint, "Defendants Unlawful Activities Using RMI's Trademarks," and "Defendants' Use of a Confusingly Similar Logo," do not mention any Defendants by name. (*See id.* 11:21–13:24).  Rather, Plaintiffs vaguely allege that

"Defendants use the Infringing Marks within their metadata keywords," and "Defendants' infringing acts . . . are likely to cause confusion." (*Id.* 12:4; 13:12–23). Without names or identifying information in the factual allegations, the Court cannot draw a reasonable inference that the defendant agents or employees were a "moving force in the decision" to engage in the infringing acts. For those reasons, the Court finds that this factor weighs in favor of default judgment against REL, but not Diaz, Alvarez, or Rodriguez.

**b. Breach of Contract**

In Nevada, breach of contract requires the existence of a valid contract, a breach by the defendant, and damages resulting from the breach. *Med. Providers Fin. Corp. II v. New Life Centers, L.L.C.*, 818 F. Supp. 2d 1271, 1274 (D. Nev. 2011). Plaintiffs allege that the Defendants breached the terms of RMI's website when they created user profiles and used those profiles to seek out leads or customer information in direct violation of RMI's Terms of Use. (Compl. ¶¶ 58, 61–63). REL and Easton directed Diaz, Alvarez, and Rodriguez to create fake user profiles on RMI's site. (Id. ¶ 70, 77, 81). At their direction, Diaz signed up for RMI's service under the username V-Thor. (*Id.* ¶ 70). The V-Thor account was paid for by Diaz, Rodriguez, and Easton, and run by Rodriguez during relevant time periods. (*Id.* ¶¶ 70–75). Alvarez created a fake account under the username PistolPete1. (*Id.* ¶ 77). Easton, Diaz, and Alvarez also paid for a third fake account, AugustKnight. (*Id.* ¶ 81). The Complaint requests relief in the form of $100,000 in liquidated damages for each violation, per RMI's Terms of Use (*Id.* ¶¶ 15, 59). These allegations state a valid claim for breach of contract and weigh in favor of default judgment against all Defaulting Defendants.

**3. The Sum of Money at Stake in the Action**

The fourth *Eitel* factor addresses the damages at stake in the action. *See Eitel*, 782 F.2d at 1471. The Court considers "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether 'the recovery

1  sought is proportional to the harm caused by [the] defendant's conduct.'" *Next Gaming, LLC v.*
2  *Glob. Gaming Grp., Inc.*, No. 2:14-cv-00071-MMD-CWH, 2016 WL 3750651, at *3 (D. Nev.
3  July 13, 2016) (quoting *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921
4  (N.D. Cal. 2010)).

5        The total amount at stake, proven at summary judgment, is $756,599.43 under 15 U.S.C.
6  § 1117(a) for trademark infringement and $1,000,000.00 for breach of contract. (Order
7  Granting Partial Summ. J., 17:19–25).  Plaintiffs request relief in the form of joint and several
8  liability for the Defaulting Defendants, in addition to an injunction.  Taking the Complaint's
9  factual allegations as true, Plaintiffs alleged sufficient facts for the Court to reasonably infer
10 that all Defaulting Defendants breached their contract with RMI, but that only REL infringed
11 on Plaintiffs' trademarks.  Therefore, it would be unproportional to hold all Defaulting
12 Defendants jointly and severally liable for the entire amount.  This factor weighs against default
13 judgment.

14        **4.  Possibility of a Dispute Concerning Material Facts**

15        The fifth *Eitel* factor evaluates the possibility of dispute as to any material facts in the
16 case. *PepsiCo.*, 238 F. Supp. 2d at 1177.  Once the Clerk of Court enters default, all well-
17 pleaded facts in complaint, except those relating to damages, are taken as true. *Id.*  Because the
18 Complaint contains well pleaded facts alleging trademark infringement and unfair competition
19 by REL, and breach of contract by all Defaulting Defendants, the possibility of a dispute
20 concerning material facts is low.  Further, the Court has already granted summary judgment
21 against Easton in this matter. (Order Granting Partial Summ. J.).  Although a dispute may exist
22 concerning the extent of the Defaulting Defendants' involvement in the alleged causes of
23 action, few, if any, other disputes remain in this case. Thus, this factor also weighs in favor of
24 default judgment.
25 ///

### 5.  Excusable Neglect

The sixth factor considers whether the Defendants' defaults are due to excusable neglect. *Id.* If a defendant is "properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion," the default "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

It is unlikely that the defaults are due to excusable neglect in this case.  As explained *supra*, Plaintiffs had difficulty locating the Defendants in order to properly serve them. Ultimately, the Court granted Plaintiffs' Motion to Permit Alternative Method of Service, to which the Plaintiffs followed up with a Notice of Compliance one month later.  Plaintiffs emailed the Defendants at the email addresses they provided when signing up for RMI's dating service. (Mot. Permit Alt. Service, 4:20–27, 5:1–4).  While it is possible these emails were created for only temporary use, the Defendants were nonetheless properly served.  This factor weighs in favor of default judgment.

### 6.  Policy for Deciding on the Merits

As the Ninth Circuit in *Eitel* explained, "[D]efault judgments are ordinarily disfavored." 782 F.2d at 1472.  "Cases should be decided upon their merits whenever reasonably possible." *Id*.  This public policy factor weighs against default judgment.  Nonetheless, evaluating all seven *Eitel* factors as applied to this case, the Court finds that the majority of the factors weigh in favor of default judgment.

### B. Relief

In conclusion, the *Eitel* factors weigh in favor of default judgment.  However, Plaintiffs may not collect the entire $1,756,799.43 jointly and severally, from each Defendant.  Because the profits made from the trademark infringement and unfair competition claims were not properly alleged against Maria Jose Diaz, Nelida Tejeda Alvarez, and Jorge Osbaldo

Rodriguez, Plaintiffs may only collect that amount of $756,799.43 from Richard Easton Limited. Therefore, judgment is proper against Richard Easton Limited in the amount of $756,799.43, jointly and severally with Richard Easton. Judgment is proper in the amount of $1,000,000 for liquidated damages, plus $10,825.17 in attorneys' fees, against Maria Jose Diaz, Nelida Tejeda Alvarez, and Jorge Osbaldo Rodriguez, jointly and severally with Richard Easton and Richard Easton Limited.

Plaintiffs also seek to permanently enjoin the Defaulting Defendants from:

(a) selling, offering for sale, distributing, advertising, or promoting any goods or services that display any words or symbols that so resemble or are confusingly similar to Reflex's Trademarks as to be likely to cause confusion, mistake or deception, on or in connection with any goods or services that are not authorized by or for Reflex;

(b) using Reflex's Trademarks, or any other marks or domain names confusingly similar to those marks alone or in combination with any other letters, words, letter strings, phases or designs, or the look and feel of any of Reflex's websites in commerce or in connection with any goods or services;

(c) using Reflex's Trademarks, or any words or phrases confusingly similar to those marks, for the purpose of drawing or diverting traffic to any websites owned or operated by Easton or by any related companies;

(d) using any word, term, name, symbol, or device or combination thereof that causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of Easton or his goods with Reflex or as to the origin of Reflex's goods or services, or any false designation of origin, false or misleading description or representation of fact; or

(e) further infringing on the rights of Reflex in and to any of its trademarks, products and services or otherwise damaging Reflex's goodwill or business reputations.

(Mot. Default J., 11:10-12:7). Under the Lanham Act, courts have the "power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark . . . ." 15 U.S.C. § 1116(a). In fact, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Est. Corp. v. Sandlin*, 846

F.2d 1175, 1180 (9th Cir. 1988).  To attain a permanent injunction, Plaintiffs must demonstrate: (1) actual success on the merits; (2) a likelihood of irreparable injury if injunctive relief is not granted; (3) a balance of hardships favoring Plaintiff; and (4) that an injunction will advance the public interest. *Winter v. Natural Res. Def. Counsel*, 555 U.S. 7, 20 (2008).

Here, Plaintiffs have shown actual success on the merits of their trademark infringement claim.  If an injunction were not granted, Plaintiffs would suffer irreparable injury from the ongoing damages to their goodwill and diversion of clients to infringing services.  Moreover, the balance of hardships favors Plaintiffs because without an injunction, Plaintiffs will lose goodwill, while an injunction will only prohibit Defendants' infringing activities.  Finally, an injunction is in the public interest because "[t]he public has an interest in avoiding confusion between two companies' products." *Internet Specialties West, Inc. v. Milon–DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n. 5 (9th Cir.2009).  Accordingly, the Court grants Plaintiffs' request for a permanent injunction as requested.

///

///

///

///

///

///

///

///

///

///

IV.     **CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Default Judgment, (ECF No. 77), is **GRANTED.**

**IT IS FURTHER ORDERED** that judgment shall be entered as follows: (1) $756,799.43 against Richard Easton Limited, jointly and severally with Richard Easton; and (2) $1,000,000 for liquidated damages and $10,825.17 in attorneys' fees against Richard Easton Limited, Maria Jose Diaz, Nelida Tejeda Alvarez, and Jorge Osbaldo Rodriguez, jointly and severally with Richard Easton.

**IT IS FURTHER ORDERED** that permanent injunctive relief prohibiting Defaulting Defendants from infringing on Plaintiffs' trademarks as described in this order is **GRANTED**.

The Clerk shall enter judgment accordingly and close the case.

**DATED** this ___15___ day of September, 2023.

_____
Gloria M. Navarro, District Judge
United States District Court